■ Bobby Martinez, an Infant, by Rose Brown, His Guardian, Appellant, v Anthony J. Moroldo, Appellant, and Interboro Group Bus Company et al., Respondents.—Order of the Supreme Court, New York County (Edward H. Lehner, J.), entered on or about July 24, 1989, which granted the motions by defendants Interboro Group Bus Company and the Board of Education of the City of New York for summary judgment dismissing the complaint, is unanimously reversed on the law and the motions denied, without costs or disbursements.

Plaintiff Bobby Martinez, a severely retarded seven-year-old boy, instituted this action for damages for serious personal injuries allegedly sustained when he was hit by a vehicle driven by defendant Anthony J. Moroldo on March 5, 1986. Several hours earlier, a van operated by defendant Interboro Group Bus Company, which has a contract with defendant Board of Education of the City of New York, had dropped plaintiff off after school at the curb in front of his residence at 2931 Eighth Avenue in Manhattan. At the time, he was living with his mother, siblings and cousins, but, subsequent to the commencement of the instant lawsuit, his mother died and an aunt was substituted as his guardian. His father is also deceased.

Plaintiff attended special education classes at the Lorge School, and Interboro had been engaged to transport students,

including Bobby, from home to school and back again. The city had issued a manual, the "School Bus Contractor's Manual of Procedures and Requirements", which required strict supervision of special students during delivery to their homes. Thus, rule 3.11 provides that: "All handicapped pupils are to be met by a parent upon delivery home from school, unless the parent has, in writing, designated some other responsible adult, or given written permission for the child to be left alone. In the event that a pupil is not met the pupil is not to be left alone."

The rule proceeds to set forth certain procedures that are to be followed in the absence of a parent. On the day of the accident, plaintiff was dropped off in front of his building, and there was no one to meet him. The bus driver, purportedly not complying with the specified procedures, merely watched Bobby walk into the lobby of the building and drove away. Plaintiff thereafter wandered outside and, on Harlem River Drive, was struck by Moroldo's automobile. Interboro and the city are both charged with negligence in discharging Bobby from the school bus without his mother or another authorized adult being present, in failing to properly supervise him, in breaching a special duty of care owed to the child and in neglecting to use reasonable and proper care under the circumstances. Prior to the completion of discovery, Interboro and the city moved for summary judgment dismissing the complaint on the ground that on February 10, 1986, plaintiff's mother had given written permission for Bobby to be dropped off in front of his apartment house after school without an authorized person being present to receive the child. In granting the motions of Interboro and the city, the Supreme Court concluded that "[t]o defend against this motion by asserting that the signature of the mother of the infant plaintiff was a forgery, plaintiff had an obligation (even though Mrs. Martinez has since died) to come forward with examples of Mrs. Martinez's signature in order to raise a triable issue of fact as to the validity of the consent. That not having been done or any excuse offered why it could not be done, the court finds that in light of such consent there is no basis for the claims herein against movants."

At the outset it should be noted that dismissal was granted notwithstanding that the city had not yet been deposed and for months had failed to produce a copy of the rules and regulations relating to bus deliveries despite being directed to do so by a court order. Moreover, neither of the defendants included in their answer any reference to the supposed autho-

rization signed by plaintiff's mother as an affirmative defense; rather, they raised a defense limited to a claim of contributory negligence and plaintiff's own culpable conduct. It is also significant that at a hearing held by the city in connection with plaintiff's notice of claim, the city did not produce the alleged authorization, did not request that the child's mother identify her signature and did not question her about her reasons for executing such a consent form. Instead, she was simply asked if she had ever signed an authorization or if she had ever given permission allowing her son to be dropped off in the care of anyone except herself, and she replied that she had not. She apparently also contradicted the testimony of the bus driver by contending that she regularly met Bobby when he was discharged after school. Although plaintiff's mother is no longer alive, her sworn testimony denying that she ever provided permission to Interboro or the city to deliver her son in the absence of another person being on the scene is certainly sufficient to raise a triable issue of fact even assuming that defendants could be accorded summary judgment in their favor on a defense not asserted in their respective answers. Indeed, such a drastic remedy is particularly unwarranted where the purported consent was produced for the first time after plaintiff's mother had died and was no longer available to personally challenge its authenticity. Certainly, the validity of a signature is generally a question of fact to be determined at trial (see, Diplacidi v Gruder, 135 AD2d 395, 396, wherein this court stated that "the necessity of expert testimony would seem to be more appropriate for proof at trial"). Accordingly, the court, under the circumstances herein, should not have granted defendants' motions for summary judgment pursuant to CPLR 3212 dismissing the complaint as against them. Concur—Milonas, J. P., Rosenberger, Ellerin and Smith, JJ.